U.S. DISTRICT COURT
Southern District of Georgia
Filed in Office
10:50 A. M.
5-26-20 05
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

UNITED STATES OF AMERICA

vs.

CASE NO.: CR203-3

DOUGLAS BRADLEY, JR.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Defendant Douglas Bradley, Jr., ("Defendant") has been charged with being a felon in possession of a firearm, in violation of 18 U.S.C.A. § 922(g). Defendant, through counsel, filed a Motion to Suppress Evidence, and the Government filed a Response. On May 17, 2005, the undersigned conducted an evidentiary hearing to address this Motion. John Eckhoff ("Eckhoff"), formerly an officer with the Glynn County Police Department, and Defendant testified at this hearing. For the following reasons, Defendant's Motion to Suppress should be **DENIED**.

## FINDINGS OF FACT

The credible testimony at the suppression hearing establishes the following:

Eckhoff received a "10-37, Suspicious Vehicle" call and arrived at Westway Apartments in Brunswick, Georgia, on the evening of June 10, 2002. When Eckhoff arrived at the apartments, three (3) other officers, Kernes, Stalvey, and Baerga, were present at the scene. Eckhoff thought that the "suspicious vehicle" may have been stolen because there was no license plate on the car, it had been recently painted, and the tail

AO 72A
(Rev. 8/82)

light assembly did not match the car's Vehicle Identification Number ("VIN"). Eckhoff also thought that this vehicle was a 1986 or 1985 Oldsmobile; he could not determine the exact year due to the discrepancies between the tail light assembly and the VIN.

One of the officers was told he might want to talk to Defendant and was directed to the apartment where Defendant might have been. Eckhoff stated that the other officers who arrived on the scene before he did reported to him that Defendant was asked if he knew anything about the Oldsmobile in the parking lot. Eckhoff also stated that he was told that Defendant said that a friend of his, whose name Defendant did not know, drove the car from McIntosh County and left it in the parking lot. Eckhoff testified that he was also told that Defendant later told the officers that he was standing in the parking lot and saw the Oldsmobile being driven through the parking lot. Eckhoff stated that Defendant told the officers that he followed the car and told the driver that he could park the car at the apartment complex because it did not have a license plate and the police might stop him as a result. (Hrg. Tr., pp. 7-8.) Eckhoff also stated that Ms. Armstrong, who was in the apartment with Defendant, was asked by the officers if she knew anything about the car; she said she did not. Eckhoff further stated that the opinion of the other officers was that the car was stolen.

Eckhoff, who was the highest ranking officer at the scene, testified that he believed he directed one of the officers to speak to someone at the front office; the person in the front office said he did not think the car was registered to anyone in the apartment complex. Eckhoff also testified that he did not know whether the vehicle had been stolen or abandoned at that point, and he looked through the window of the car for ownership papers. He noticed some papers and could see some information written on these papers.

2

Eckhoff then opened the locked car with a "Slim Jim" and looked at the papers in an attempt to verify ownership of the car. After he opened the car, Defendant's girlfriend, Ms. Armstrong, approached Eckhoff and told him that someone was on the phone who wanted to speak with him. The woman on the telephone, Ms. Whitten, claimed to be the owner of the vehicle, and Eckhoff asked her to come to the apartment complex's parking lot. Eckhoff testified that it was not until Ms. Whitten came to the parking lot and showed him ownership papers that he was able to verify that the car was not stolen. Eckhoff also testified that he could not recall if the car was reported stolen after the VIN was sent through the systems, but, even if it had not been, he still had a duty to investigate to determine ownership of the vehicle.

Eckhoff stated that Ms. Moseley was the "first civilian on the scene", and she informed him that she saw Defendant at some prior time "at or in the car and knew he had a weapon." (Hrg. Tr., p. 12.) After Eckhoff opened the car, he asked Defendant to come to the car and asked if he knew anything about a shotgun. Eckhoff stated that he was concerned about the safety of the officers at the scene. Defendant told him that the shotgun was in a plastic bag in the front of the car and that he obtained the gun from someone from Camden County. Eckhoff may have had one of the other officers put Defendant's name through the criminal information systems; at that point, it was revealed that Defendant was a convicted felon. Eckhoff testified that he could not recall whether Defendant's name was put through the system before or after he opened the car and asked Defendant about the shotgun but that he was "sure it was done probably after." (Hrg. Tr., p. 23.) Eckhoff noted that he opened the Oldsmobile in an attempt to find the name of the vehicle's owner, not to find any contraband.

3

Defendant testified that Ms. Whitten was a friend of his and his girlfriend's, and she had allowed them to drive the Oldsmobile for about a year. Defendant also testified that the car was parked in front of the apartment he shared with his girlfriend. He further testified that he had personal belongings in the car, including a compact disc ("CD") case with CDs and a bag containing his clothing. Defendant attested that he had access to the keys for the car and locked the car after he drove it. Defendant stated that he and his girlfriend had been driving the car for about a year, and the last time he rode in the car was about a week prior to June 10, 2002. Defendant testified that a friend, Pamela Hutchenson, was driving the car at that time, and they were stopped in McIntosh County by a police officer; Defendant stated that the police officer took the license plate from the car because the license plate decal did not match the Oldsmobile.

Defendant seeks to suppress evidence seized during the search of the car.

## ISSUES PRESENTED

Defendant asserts that officers searched the Oldsmobile without probable cause or a warrant and proper consent[1] was not obtained.

## DISCUSSION AND CITATION TO AUTHORITY

I.  **Defendant Has Standing to Challenge the Search.**

"To have standing to challenge a search, one must manifest a subjective expectation of privacy in the invaded area that 'society is prepared to recognized as reasonable.'" United States v. Cooper, 133 F.3d 1394, 1398 (11th Cir. 1998) (quoting

---

[1] Defendant, through counsel, raised consent as an issue in his Brief in Support of the Motion to Suppress. The testimony at the evidentiary hearing did not indicate, however, that consent is an issue before the Court. There was no testimony that Defendant gave consent to Eckhoff to search the Oldsmobile, nor was there any testimony indicating that the officers needed Defendant's consent to search the car.

4

Rakas v. Illinois, 439 U.S. 128, 143 & n.12, 99 S. Ct. 421, 430 & n.12, 58 L. Ed.2d 387 (1978)). A person's subjective expectation must be objectively "justifiable under the circumstances." Id. (internal citation omitted). An individual having the use of a vehicle with the permission of "an absent owner" can be said to "possess a reasonable expectation of privacy therein." Id.

However, even "[l]egitimate expectations of privacy can be abandoned." United States v. McKennon, 814 F.2d 1539, 1546 (11th Cir. 1987). "In determining whether there has been abandonment, the critical inquiry is whether the person prejudiced by the search . . . voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search. Whether abandonment has occurred is a question of intent that may be inferred from acts, words and other objective facts." United States v. Cofield, 272 F.3d 1303, 1306 (11th Cir. 2001) (internal citations and punctuation omitted). If abandonment has occurred, the individual loses his Fourth Amendment protection. See id. at 1307.

Defendant's testimony at the evidentiary hearing was that he and his girlfriend were given permission to drive the Oldsmobile by the owner, Ms. Whitten, and that they had been driving the car for about one year. Defendant also testified that the Oldsmobile was parked in front of the apartment he shared with his girlfriend. Defendant further testified that he had keys to the car and was a passenger in the car about a week before the search at issue. Finally, Defendant's testimony was that he had personal belongings in the car, which included a CD case with CDs and a bag containing his clothing. This testimony reveals that Defendant had a subjective expectation of privacy in the Oldsmobile. His

5

expectation of privacy was reasonable given his testimony that the owner of the Oldsmobile had permitted him to drive the car for a year. Thus, Defendant has standing to challenge the search of the Oldsmobile due to his reasonable expectation of privacy.

Nonetheless, based on Eckhoff's testimony at the evidentiary hearing, Defendant abandoned his expectation of privacy. Eckhoff's testimony revealed that Defendant and his girlfriend told the other officers that they did not know the name of the owner of the car. In fact, according to Eckhoff, Defendant gave conflicting accounts as to who the owner of the car might be. When officers first asked Defendant if he knew anything about the car in the parking lot, Defendant told officers that a friend of his, whose name he did not know, drove the car from McIntosh County and left it in the parking lot. Eckhoff also testified that, after Defendant told this to the other officers on the scene, he later told them that he saw the Oldsmobile being driven through the parking lot; Defendant told the driver that he could park the car at the apartment complex because Defendant noticed there was not a license plate on the car and worried that the police might stop the car.

Whatever expectation of privacy Defendant may have had in the Oldsmobile was abandoned. The only objective facts before the Court concerning the officers' knowledge of the ownership of the Oldsmobile at the time the search of that car was performed on the night of June 10, 2002, were that the car belonged to someone other than Defendant, and he did not know who that person was. There was no testimony at the evidentiary hearing before the undersigned, either by Defendant or Eckhoff, that Defendant informed officers that he was driving the car with the express permission of Ms. Whitten, his friend and the owner of the Oldsmobile, at any time before or after the search took place. As a result, Defendant "relinquished his interest" in the car at the time of the search such that he no

longer enjoyed a "reasonable expectation of privacy" in the car. See Cofield, 272 F.3d at 1306.

## II. The Search of the Vehicle was Lawful.

"The right of the people to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. Searches conducted "'without prior approval by [a] judge or magistrate[ ] are *per se* unreasonable under the Fourth Amendment[.]'" O'Rourke v. Hayes, 378 F.3d 1201, 1208 (quoting Coolidge v. New Hampshire, 403 U.S. 443, 454-55, 91 S. Ct. 2022, 2032, 29 L. Ed.2d 564 (1971)). However, an exception to this general rule is when a police officer "entitled to be on the property where the car is located, may search a vehicle to determine the identity of the owner." United States v. Edwards, 441 F.2d 749, 754 (5th Cir. 1971)[2].

Eckhoff arrived at Westway Apartments in response to the "suspicious vehicle" call he received. Eckhoff thought the Oldsmobile may have been abandoned or even stolen because there was no license plate on the car, it had been recently painted, and the tail light assembly did not match the car's VIN. Eckhoff and the other officers on the scene did not know who the owner of the car was, even after asking Defendant and someone who was working at the apartment complex's front office. Because of this, he opened the car door with a "Slim Jim" to look for papers evidencing ownership of the vehicle. According

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981)(*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

7

to Eckhoff, after he opened the car to look for ownership papers, Ms. Armstrong told him that someone on the telephone wanted to speak to him; Ms. Whitten was the person on the telephone, and she said she was the owner of the Oldsmobile. Eckhoff asked her to come to the apartment complex. He stated that it was only when Ms. Whitten came to the parking lot that he was able to verify that the car was not stolen or abandoned because Ms. Whitten had appropriate papers to establish her ownership of the car. However, before Ms. Whitten arrived on the scene, Eckhoff continued to investigate whether the car was stolen or abandoned. After opening the car for this purpose, he remembered Ms. Moseley telling him that she saw Defendant at an earlier time with a weapon "at or in the car". (Hrg. Tr., p. 12.) Eckhoff asked Defendant if he knew anything about a shotgun, and Defendant admitted that a shotgun was in the front seat of the car and that he received it from someone in Camden County. Eckhoff testified that he was concerned for officer safety, and that is the reason he asked Defendant about the shotgun after the Oldsmobile was opened.

Eckhoff's testimony reveals that he and the other officers were "entitled" to be at the apartment complex, as they were responding to a call about a suspicious vehicle. See Edwards, 441 F.2d at 754. Eckhoff was also able to search the Oldsmobile to determine who the owner was because he did not know at that time whether the car was stolen or abandoned. See id. A search of the car may have revealed that the car was stolen, as the officers believed was the case due to there being no license plate on the car, it being recently painted, and the tail light assembly not matching the vehicle's VIN. It was only after Eckhoff opened the Oldsmobile in an attempt to find the name of the owner that he asked Defendant if he knew anything about a shotgun because he was concerned

8

about officer safety. It was legally permissible for Eckhoff to search the car "to determine the identity of the owner." See id. As discussed in the preceding section, Defendant abandoned any reasonable expectation of privacy he may have had in the Oldsmobile, and as a consequence, any Fourth Amendment protection against this search. See Cofield, 272 F.3d at 1307. Accordingly, the search of the Oldsmobile on June 10, 2002, did not violate Defendant's Fourth Amendment rights.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Defendant's Motion to Suppress (Doc. 23) be **DENIED**.

**SO REPORTED** and **RECOMMENDED**, this 26th day of May, 2005.

_____
JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev. 8/82)